UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OLATUNJI DAWODU,<br><br>                            Defendant. | Crim. No.   21-CR-145 (JDB)<br>Crim No     21-CR-163 (JDB) |

**DEFENDANT'S SENTENCING MEMORANDUM**

The Defendant Olatunji Dawodu, by his attorney Kira Anne West, pursuant to Federal Rule of Criminal Procedure 32 and 18 U.S.C. Section 3553(a), submits this memorandum to aid the Court at sentencing and hereby notifies the Court that he has received and reviewed the Presentence Report ("PSR") prepared in this case.[1]

Mr. Dawodu respectfully requests that this Honorable Court impose a sentence of 10 years taking into consideration his quick agreement to plead guilty (he was first to plead guilty)[2], the fact that he has no criminal history, and the model behavior as an inmate despite serious health issues he's had since being

---

[1] The defendant initially objected to paragraphs 59 and 63 of the Draft PSR. Those objections are resolved in that objection to paragraph 50 is withdrawn and 63 can be explained. Mr. Dawodu was willing to discuss with the government his participation under the safety valve but was otherwise not eligible for the 2 point departure.

[2] *See* August 16, 2022 minute order.

incarcerated in the D.C. jail. His early plea saved the government from litigating the wiretap issue and other pretrial motions that would have been filed. Finally, this Court should consider the awful conditions Mr. Dawodu has spent waiting to be sentenced in the DC jail, a jail that Judge Collar-Kotelly and others (Judge Royce Lamberth) have found sub-standard in prior opinions.

## INTRODUCTION

Mr. Dawodu does not dispute his actions here. He comes before the Court having spent more than a year in the sub-standard D.C. jail. Importantly, there was no violence used in the commission of this offense.

Pursuant to the United States Sentencing Guidelines (hereinafter "USSG"), the defendant maintains the following Guideline sections apply:

| | | |
|---|---|---|
| USSG 2D1.1: | Base offense level[3] | 36 |
| USSG 2D1.1(b)(7): | Mass marketing | +2 |
| USSG 2D1.1(b)(12): | Maintain premises | +2 |
| USSG 2D1.1(b)(13): | Misrepresent Fentanyl | +4 |
| USSG 3E1.1(a) & (b): | Acceptance of Resp. | -3 |
| ADJUSTED OFFENSE LEVEL | | 41 |

Based upon these figures, and a criminal history category of I, Dawodu's final guideline range is 324-405 months. A sentence at the low end of the agreed

---

[3] Although the PSR starts the BOL at 38, the defense maintains that the bargained for level 36 should be applied by the Court as the amount of drugs reasonably foreseeable to Mr. Dawodu.

2

upon range, is a sentence that must be "sufficient, but not greater than necessary to address the sentencing factors and goals set forth in Title 18 U.S.C. § 3553(a).[4] Under the facts of this case, such a sentence, will protect the public, provide just punishment, and afford adequate deterrence.

**1. BACKGROUND**

Mr. Dawodu's childhood was marred by the fact that his father left the family when he was yet a boy. His mother raised him and his sister by working outside the home. He did not set out to commit crimes. He fell into it only after losing his work during the Covid 19 pandemic like so many others. He had to earn money to live.

This has been a long road for Mr. Dawodu. The impact on his family has been a source of great stress, sadness and regret for him. Fortunately, since his arrest, he has engaged in meaningful reflection about his life. He has an education, and a sister who lives in the United States who has been very supportive while he's been incarcerated. He has plans for the future that are law abiding. He has spent his time in jail taking classes and encouraging other inmates to do the same.

A term of ten years' imprisonment will serve the statutory purposes of punishment, deterrence or further protect the public. Mr. Dawodu pled guilty at a very early stage in the proceedings thus saving valuable judicial resources. He did

---

[4] The probation officer found a criminal history category II applies in her final PSR which would mean a guidelines range of 78-97 months.

not file motions, such as a motion to suppress the wiretapped information, that would have taken up the Court's time. He's withstood almost two more years of incarceration in the horrible D.C. Jail. Based on many reasons, he respectfully requests that the Court exercise discretion and grace and sentence him to 120 months.

## II.  LEGAL STANDARD

The selection of an appropriate sentence from within the guidelines range, as well as the decision to depart from the range in certain circumstances, are decisions left solely to the sentencing court. *Williams v. United States*, 503 U.S. 193, 195 (1992). The sentencing guidelines are merely advisory. *United States v. Booker*, 543 U.S. 220 (2005). The Supreme Court has made clear that the Sentencing Guidelines have become only one of the many factors that a sentencing court should consider. *See Gall v. United States*, 552 U.S. 38, 49 (2007) ("The Guidelines are not the only consideration … the district judge should consider all of the §3553(a) factors to determine whether they support the sentence requested by a party"). In reviewing the factors, the court may not presume the Guidelines range is reasonable. *Id*.

In reviewing the sentence, the appellate court must first ensure that the district court made no significant procedural errors and then consider the sentence's substantive reasonableness under an abuse-of-discretion standard, taking into

account the totality of the circumstances, including the extent of a variance from the Guidelines range, but must give due deference to the district court's decision that the §3553(a) factors justify the variance. *United States v, Gall*, 128 S. Ct. 586 (2007). (*citing United States v. Booker*, 543 U.S. 220, 260 (2005)).

Section 3553(a) of Title 18 of the United States Code enumerates certain factors a district court must consider when sentencing a defendant who has been convicted of a federal offense:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;
2. The need for the sentence imposed to:
   a) Reflect the seriousness of the offense;
   b) Promote respect for the law and provide just punishment for the offense;
   c) Afford adequate deterrence to criminal conduct;
   d) Protect the public from further crimes of the defendant; and
   e) Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. The kinds of sentences available;
4. The kinds of sentence and the sentencing range for the applicable category of offense…;
5. Any pertinent policy statements issued by the Sentencing Commission;
6. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
7. The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7). Some of these considerations apply here and are discussed as they relate to Mr. Dawodu.

At sentencing, a district court must impose a sentence that is "sufficient, but not greater than necessary" in light of the factors identified in §3553(a). *United*

*States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010), *citing Kimbrough v. United States*, 552 U.S. 85, 111 (2007)(quoting §3553(a)). A "district court making the initial sentencing decision may not presume that the appropriate sentence in a given case will come from the Guidelines." *Mendoza-Mendoza*, 597 F.3d at 216, *citing Rita v. United States*, 551 U.S. 338, 351 (2007). The Court can no longer presume that a guideline sentence is the correct sentence; to do so would be taking a large step towards returning to the pre-Booker regime. *United States v. Pickett*, 475 F.3d 1347 (D.C. Cir. 2007). Under the new advisory guideline scheme, "district courts have a freer hand in determining sentences." *United States v. Trujillo-Tauruses*, 405 F.3d 814, 819 (10th Cir. 2005). They may sentence in or out of the applicable guideline range. District judges now have more substantive discretion in sentencing, and retain the power to re-balance the individual sentencing against the goals of sentencing uniformity and predictability. And a district court need not justify a sentence outside the Guidelines range with a finding of "extraordinary" circumstances." *Gall v. United States*, 552 U.S. 38, 47 (2007) (upholding a sentence of thirty-six months probation, a 100 percent downward deviation from the Guidelines range of thirty-thirty-seven months imprisonment).

**III. FACTORS CONSIDERED UNDER 18 U.S.C. §3553(a)**

  A. **Nature & circumstances of the Offense & the History and Characteristics of Mr. Dawodu**

6

Prior to this offense, Mr. Dawodu had little contact with the criminal justice system. *See* Draft PSR ¶ 83-85. He has an education, a college degree. *See* Draft PSR ¶ 110. To those who have known him, he has always been not only a hard worker, but also a good friend. To his family, Mr. Dawodu has always been a loving son and brother. Mr. Dawodu recognizes the seriousness of the offense for which he has admitted responsibility, and is remorseful about his actions and the consequences of his actions to those around him and to society at large. It is his remorse and his recognition of having made a mistake, as well as his other qualities as a person that makes Mr. Dawodu's family remain supportive of him in these difficult times. Fortunately, he has not only family support but and education which he can utilize at the end of his incarceration.

Thankfully, the offense here did not involve anyone being harmed. It is a serious criminal offense. Mr. Dawodu has expressed remorse. He has agreed to forfeiture. Any incarceration in addition to the requested 120 month sentence will not serve a rehabilitative purpose for him.

**B. Need for the Sentence imposed**

1. **General deterrence – 18 U.S.C. § 3553(a)(2)(B) – to adequately deter others from criminal conduct**

   Incarcerating Mr. Dawodu for more time than the requested 120 months will not serve the need to deter others from committing crimes any better than a

sentence of 12 years.  The National Institute of Justice, Department of Justice, issued a summary of the current state of empirical research stating that "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime."  U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America 199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf.

2. **Specific deterrence – 18 U.S.C. § 3553(a)(2)(C) – to protect the public from further crimes of the defendant**

Incarcerating Mr. Dawodu for more than 10 years is not necessary to serve the need to deter him from committing further crimes.  He has learned his lesson and as his letter indicates,[5] wants to be a good brother and son.[6]  Moreover, an offender with only one criminal history point has a rate of reconviction of only 5.5%.  U.S. Sent'g Comm'n, *Recidivism and the First Offender* 14 n.26 (May 2004).   His exemplary behavior while being at the D.C. jail, under awful conditions coupled with serious medical issues, should assure this Court that he does not intend to ever commit another crime again.

3. **The kinds of sentences available & factors affecting the appropriate sentence**

---

[5] Undersigned counsel expects to receive this before sentencing.
[6] Mr. Dawodu when working regularly sent money home to Nigeria to his mother.

8

Imposition of a fine is discretionary, and, defendant respectfully submits, should not be ordered in this case. Defendant's financial condition is such that he cannot pay any significant fine. *See* PSR ¶ 122; U.S.S.G. **§ 5E1.2(a)** (fine not recommended if defendant unable to pay). 18 U.S.C. § 3553(c) " requires that the court provide a 'reasoned basis' for its decision and consider all 'nonfrivolous reasons' asserted for an alternative sentence." *United States v. Locke*, 664 F.3d 353, 357 (D.C. Cir. 2011) (citation omitted). Mr. Dawodu respectfully requests that the Court order a term of supervised release of five years as is required under that statute.

The D.C. Jail where he has spent the bulk of his of incarceration pending sentencing is certainly not designed for long-term confinement. Rather, the D.C. Jail is meant to house "transitional" detainees, and precisely because the nature of detainees at the jail is in constant flux, the ever changing tension and potential danger is greater than if Mr. Dawodu were detained at a BOP facility.

Consideration of pre-sentence confinement is appropriate under 18 U.S.C. Section 3553(a). Given his unusually long detention at such a transitional facility, mitigation under this statute is warranted, and merits the Court's consideration in sentencing when considering the requested variance. *See United States v. Carty*,

264 F.3d 191, 196 (2d Cir. 2001).[7] The court ruled "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures...." (Sentence was vacated and remanded for reconsideration in light of conditions of pre-sentence detention in Dominican Republic)2; *United States v.Mateo*, 299 F.Supp.2d 201, 212 (S.D.N.Y.2004) (A downward departure was granted where pre-sentence conditions "effectively enhanced, to a disproportionate degree, the level of punishment contemplated to be experienced by inmates in the typical case during the period of incarceration prescribed by the Guidelines."); *United States v. Fajardo*, Slip Op. 3498640, pp.3-4 (S.D.N.Y., Dec. 5, 2006) (The court ruled that a downward departure was not available given a mandatory).

4. **The need to avoid unwarranted sentencing disparities**

According to the Sentencing Commission's Sourcebook, the average sentence given to all offenders in fentanyl cases in 2021 was 60 months. *See* Figure D-3, 2021 USSC Sourcebook of Federal Sentencing Statistics. U.S. Sentencing

---

[7] The decision in *Carty* states in relevant part:
According to the Sentencing Guideline Manual, a sentencing court may depart if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." U.S.S.G.  5K2.0 (quoting 18 U.S.C.  3553(b)). No evidence exists to show that the Sentencing Commission took the conditions of a pre-sentence detainee's confinement into account in creating the Guidelines. Indeed, there is no indication that the Commission contemplated that federal pre-sentence detainees would be kept in any detention facilities other than federal facilities.

Commission, 2021 Datafile, USSCFY21. Here, Mr. Dawodu should be given some consideration of the fact that of the three defendants, he is least culpable. The government would surely agree with this.

## IV. CONCLUSION

Given his age, his serious health issues[8], lack of criminal record, his long stay in the D.C. jail and his blemish free record while at the jail[9] and early plea, plus all other applicable factors the Court will consider, Mr. Dawodu respectfully moves this court to impose a sentence this Court believes is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a). There is little possibility of him repeating his offense or posing a threat to public safety in any way. It would be a sentence in the best tradition of federal judicial discretion, that would consider Mr. Dawodu as an individual and account for his unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Rita v. United States*, 551 U.S. at 364, (Stevens, J. concurring), *citing Koon v. United States*, 116 S.Ct. 2053 (1996).

---

[8] Honestly, when one considers how serious his health issues are, even a sentence here of 10 years could be a death sentence for Mr. Dawodu. Would two more years really make a difference here?

[9] Mr. Dawodu has completed numerous courses while at the jail and encouraged other inmates to take classes at the jail. Despite his past and his health issues, ironically, he has acted as a father figure to other younger inmates.

Respectfully submitted,

/s/ Kira Anne West
Attorney at Law
712 H Street N.E., Unit 509
Washington, D.C. 20002
kiraannewest@gmail.com
Attorney for Mr. Dawodu

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this sentence memo has been filed pursuant to the Rules of Court on the ECF system this 10th day of December, 2022.

/s/ Kira Anne West